NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF-RESPONDENT, v. BRUCE WUNNENBERG AND VIRGINIA WUNNENBERG, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued June 11, 1979—Decided July 20, 1979.

418

Before Judges FRITZ, BISCHOFF and MORGAN.

*Ms. Barbara R. Lependorf,* designated counsel, argued the cause for appellants (*Mr. Stanely C. Van Ness,* Public Defender, attorney).

*Mr. William H. Mild, III,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mrs. Erminie L. Conley,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

FRITZ, P. J. A. D. The parents of Brenda, Cynthia and Junelle Wunnenberg appeal from an order of the trial court, in an action brought by the New Jersey Division of Youth and Family Services (D.Y.F.S.), involuntarily terminating their parental rights. The opinion of the trial judge appears at 149 *N. J. Super.* 64.

Appellants first attack the judgment below on grounds involving the initial removal of Junelle. They argue that the trial judge erred "by determining that appellants' child Junelle could be involuntarily removed from her parents' custody under *N. J. S. A.* 30:4C-12 and by further determining that such a removal could serve as the basis for thereafter terminating parental rights." Appellants concede (as they must; *R.* 2:6-2(a)(1)) that this point was not raised below.

Because it is of particular significance in our determination of the first point above, it is appropriate that we record here and now our firm conviction that the result below represents substantial justice with respect to the interests of all concerned and is eminently correct. In view of this we have no hesitancy at all in invoking the proposition that an appellate court need not consider an issue not presented below, *State v. Souss*, 65 *N. J.* 453, 460 (1974); *Campbell v. Atlantic Cty. Freeholder Bd.*, 158 *N. J. Super.* 14 (App. Div. 1978), and we do decline to undertake such consideration here for the first time. Not only is this new objection of a nature which might be characterized as technical (although we do not disparage insistence on statutory compliance) but, perhaps more to the point, had it been timely made below the course of the litigation might easily have been steered in a straighter path. Additionally, even if we were to accept appellants' argument, it is difficult to discern exactly how they have been prejudiced by the aberration of which they now complain. They were not denied a full adversarial hearing on the ultimate issues. However, in these circumstances our affirmance herein must not be deemed necessarily to constitute an agreement with or endorsement of that appearing in the published opinion of the trial judge, either expressly or by inference, regarding these issues.

Appellants next contend that since the "so-called 'voluntary' surrender" of Cynthia was obtained without the presence of counsel, that "surrender was void, *ab initio*, making all subsequent procedures with respect to Cynthia also void." The only case cited in support of this proposition is *In re Guardianship of C. M.*, 158 *N. J. Super.* 585 (J. & D.R. Ct. 1978). That case is readily distinguishable from this one. There the paper signed was a "Surrender of Custody and Consent for Adoption" during a time in which formal proceedings for termination of parental rights were already pending. A caseworker contacted the involved parent directly even though the parent was represented by counsel, which counsel had expressly requested that no papers be pre-

sented without the presence of an attorney. *Crist v. N. J. Div. of Youth & Family Serv.*, 128 *N. J. Super.* 402 (Law Div. 1974), aff'd in part, rev'd in part, 135 *N. J. Super.* 573 (App. Div. 1975), which meets the counsel problem head on, is also distinguishable on its facts.

Nevertheless, the comment of Justice Pashman in his concurring opinion in *In re Guardianship of Dotson*, 72 *N. J.* 112 (1976) has not escaped our attention:

* * * Even in this State, indigent parents who are subjected to proceedings which may result in either temporary loss of custody or permanent loss of parental rights have a constitutional right to appointed counsel. * * * [at 123]

With respect to Cynthia, it is doubtful if her surrender was in the course of a "proceeding," as Justice Pashman intended that word. Certainly her parents were not yet "subjected" to a "proceeding" at that point. Any other interpretation would very substantially devitalize many of the useful services available only through state agencies on a voluntary basis and conjure up the unlikely necessity of no communication at all without first bringing counsel into the picture.

What we have here is a severely infected and malnourished newborn baby whose parents perhaps could not understand the urgent need for the medication (in the case of the mother), or did not care (in the case of the father), who had to be rehospitalized and with respect to whose care in this effort the parents voluntarily surrendered the child. These facts were specifically found by the trial judge and are reasonably supported by sufficient evidence in the record. *Rova Farms Resort v. Investors Ins. Co.*, 65 *N. J.* 474 (1974).

Lastly in this respect, even were we to assume that the presence of counsel on the initial surrender was imperative, we would have great difficulty in identifying any resultant harm in the circumstances. In considering the problem we note that the record contains a concession that a return of

the child was never requested. It does not contain any suggestion that the parents sought counsel or that D.Y.F.S. in any way abridged or discouraged their right to seek counsel, and this despite the fact that they had previously had the services of counsel with regard to another of the children. There is no suggestion either of conduct by D.Y.F.S. in the nature of that criticized in *In re Guardianship of C. M., supra,* 158 *N. J. Super.* at 593–594. Most significantly, irrespective of the absence of counsel on the initial surrender of Cynthia, ultimately appellants were afforded and fully participated in an extended plenary hearing at which they were individually represented by counsel and the children were represented by a "law guardian." The transcript is well over 700 pages. We are satisfied that due process was fully served in the matter and there is no reason that the absence of counsel at the temporary surrender of Cynthia should result in a reversal.

Appellants conclude the argument of their brief with the contention that the court below committed error fatal to the determination by the application of the wrong standard, *i. e.,* best interests of the children, to the exclusion of the "correct legal standard," *i. e.,* parental unfitness. The argument has surface appeal. It is clear that in a matter such as this the severance of parental ties do require a finding that the parents are unfit. *J. and E. v. M. and F.,* 157 *N. J. Super.* 478 (App. Div. 1978), certif. den. 77 *N. J.* 490 (1978). It is true that there was no incantation, in the written opinion of the trial judge, of the words "parental unfitness." However, it is equally clear that his findings of parental unfitness are not only apparent but are articulated otherwise. With respect to the mother, he found her to be "incapable of caring for her children," following a discussion of *In re Cope,* 106 *N. J. Super.* 336 (App. Div. 1969), a substantial predicate for *J. and E. v. M. and F., supra.* Even greater true unfitness is described in the apparently immutable "negative and uncompromising attitude" of Bruce Wunnenberg, the father. We have no doubt at all that Judge Kleiner was, in his own words, expressing his determination that clear

and convincing evidence existed of very substantial neglect of both parental duties and claims, with no reasonable expectation of any reversal of that conduct in the future, whereby the children's best interests will be substantially prejudiced by way of impairment to their mental, psychological and, in fact, physical health if custody is returned to the parents. That is the test for parental unfitness laid down in *J. and E. v. M. and F., supra.* Not only are these findings reasonably available from sufficient credible evidence in the record but it seems to us they are compelled. Had the trial judge not found them, we would have in an exercise of our original jurisdiction. *R.* 2:10–5.

Affirmed. No costs.